IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KATHY A. PRIDDY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
Carolyn W. Colvin,[1]

    Defendant.                              No. 12-cv-267-DRH-CJP

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

## I.    INTRODUCTION

Before the Court is a Report and Recommendation (R&R) (Doc. 16) of United States Magistrate Judge Clifford J. Proud, issued pursuant to 28 U.S.C. § 636(b)(1)(B), recommending that the Commissioner's final decision denying plaintiff Kathy A. Priddy's application for social security benefits be affirmed. The R&R was sent to the parties, with a notice informing them of their right to file "objections" within fourteen days of service of the R&R. In accordance with the notice, plaintiff filed timely objections to the R&R (Doc. 17), to which the Commissioner responded (Doc. 18).

---

[1] Carolyn W. Colvin was named Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted as defendant herein. *See also*, the last sentence of 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). **The Clerk is instructed to change the docket sheet accordingly.**

Because plaintiff filed objections, this Court must undertake *de novo* review of the objected-to portions of the R&R.  28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992).  The Court may "accept, reject, or modify the recommended decision." *Willis*, 199 F.3d at 904.  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made.  *Id.*  However, the Court need not conduct a *de novo* review of the findings of the R&R for which no objections have been made.  *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). Plaintiff specifically objects to portions of the R&R's analysis. Plaintiff's brief argues the administrative law judge (ALJ) failed to consider all of plaintiff's severe impairments, specifically her headaches, in her decision and gave insufficient weight to the opinion of Dr. Gilbert-Johnson (Doc. 12). For the reasons discussed herein, the Court **ADOPTS** the findings and recommendation of the R&R.

## II.    BACKGROUND

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB). Plaintiff applied for DIB in November 2009, alleging disability beginning on August 31, 2009 (Tr. 104). The application was denied initially and on reconsideration. Counsel represented plaintiff during the administrative proceedings. After a video hearing held on July 11, 2011, ALJ Rebecca LaRiccia denied her application on August

20, 2011 (Tr. 8-22). The Appeals Council denied plaintiff's request for review on February 21, 2012 and thus the August 20, 2011 decision became the final agency decision (Tr. 1).

Plaintiff specifically objects to the R&R's analysis of plaintiff's complaint (Doc. 16, pp. 13-17). Thus, as plaintiff does not object to the R&R's recitation of the applicable legal standards, the decision of the ALJ, the evidentiary record, evidentiary hearing, medical records, and state agency consultant assessment, the Court adopts these portions of the R&R as its own and will not summarize them fully here.

In brief, plaintiff was born in 1957, and was 52 years old on the alleged date of disability (Tr. 104). From 1990 to 2009, plaintiff worked as medical biller. She was laid off in June 2009. In a disability report, plaintiff stated that she was unable to work due to bi-polar disease with chronic depression and headaches as of August 31, 2009. (Tr. 124-25). The ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity (RFC), jobs exist in significant numbers in the national economy that plaintiff can perform and that she has thus not been under a disability from August 31, 2009 through the date of the ALJ's decision (Tr. 21-22).

### III.  ANALYSIS

The Court has reviewed the legal standard Magistrate Judge Proud employed *de novo* and agrees with the standard as discussed in the R&R. Thus,

the Court will only summarize the proper standard it will use to determine the correctness of the ALJ's findings below.

   a. **Legal Standards**

This Court's scope of review is limited in a social security appeal to ensuring that substantial evidence supports the decision and that it is free from mistakes of law. *See Books v. Chater,* 91 F.3d 972, 977-78 (7th Cir. 1996). The Supreme Court definition of "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The Court takes the entire administrative record into account but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir. 1997) (*overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1997)). However, despite this deferential review, the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue,* 597 F.3d 920, 921 (7th Cir. 2010).

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.  In order to determine whether a claimant is disabled, the ALJ must consider (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform relevant work; and (5) whether the claimant is capable of performing any work

within the economy given his age, education, and work experience. 20 C.F.R. § 404.1520(b-f); *see Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). If the Commissioner finds the claimant has a severe impairment which renders him unable to perform his past relevant work, the burden shifts to the Commissioner to show there are significant jobs he is capable of performing. *See Bowen v. Yuckert,* 482 U.S. 137, 145 n. 5 (1987).

### b. Application

Plaintiff raises two arguments in support of her complaint:

1. The ALJ did not consider all of plaintiff's severe impairments in her decision; specifically, her allegations of headaches.
2. The ALJ gave insufficient weight to the opinion of Dr. Gilbert-Johnson.

The Court has thoroughly reviewed the record and pleadings in this matter and is in agreement with Magistrate Judge Proud that the ALJ's decision should be affirmed.

### i. The ALJ Failed to Consider all of Plaintiff's Severe Impairments

Plaintiff's objections argue the ALJ failed to consider all of plaintiff's impairments; specifically, her headaches and neck pain. Concerning plaintiff's allegations of headaches, as the R&R and this Court note, the ALJ's decision does not explicitly discuss plaintiff's headaches. However, the ALJ relied upon Dr. Tin's assessment which in turn considered state medical doctors' opinions as to plaintiff's headaches (Tr. 358, 362). Dr. Tin noted that plaintiff alleged she was disabled due, in part, to "headaches," and that plaintiff's physical problems were

"addressed elsewhere" by the state agency physicians (Tr. 358, 362). MRI studies on plaintiff's brain and orbits due to a history of headaches performed in March 2009 noted unremarkable results and no evidence for aneurysm (Tr. 335-36). An MRA of plaintiff's head performed in April 2009 noted similar results (Tr. 329). State agency physician, Dr. Gotanco, stated:

> The claimant complains of headaches. An MRI and CT scan of the brain was negative. There is no longitudinal history of frequent ER, MD or hospital visits because of the headaches. An MRI of the C-Spine showed mild degenerative changes. There is no MSS [medical source statement] in the file. The claimant's ADL's [activities of daily living] indicate limitations from only her psychiatric problems. She indicates no physical limitations nor limitations as a result of the alleged headaches.
>
> Claimant is found credible.

(Tr. 261). Further, state agency physician, Dr. Gotway, found that plaintiff had a history of headaches, but explained that the "past testing did not show abnormality" (Tr. 366). Dr. Gotway noted that plaintiff had mild degenerative disc disease of the cervical spine, but remained neurologically intact (Tr. 366). Moreover, the Disability Determination and Transmittal forms Drs. Gotanco and Gotway signed showed that plaintiff had a primary diagnosis of "affective/mood disorders," and secondary diagnoses of "NONE" and "None Established" (Tr. 50-51).

Plaintiff's objections argue she received treatment for headaches at the H Group (Doc. 17, p. 1). Plaintiff references a February 2010 diagnostic assessment which merely noted plaintiff was taking various medications for "high blood pressure and migraines" (Tr. 296). Importantly, at the hearing, plaintiff did not

testify and she does not now allege that her headaches caused any work-related limitations. As the R&R notes, plaintiff's testimony established that her headaches were "relatively mild" (Doc. 16, p. 14). On the date of the hearing, plaintiff stated her headaches were "about a four" on a pain scale of one to ten, they were "[j]ust a nagging in the back of [her] head," and that this was the extent of her headache pain on average (Tr. 42). She also noted that her headache medication (Tramadol) sometimes helped her headache pain and that she had not taken it on the day of the hearing (Tr. 42-43).

A "severe impairment" is one that significantly limits an individual's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). While various medical records note plaintiff has a history of headaches, the record does not establish ongoing treatment or limitations related to plaintiff's complaints of headaches. The Court is in agreement with the R&R that based on this record, no reasonable ALJ would conclude that plaintiff's headaches were disabling, either alone or in combination with her other impairments. As such, even if the ALJ erred in not explicitly discussing plaintiff's headaches, the Court finds any error is harmless. Thus, remand would serve no purpose. *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011).

Plaintiff's instant objections also argue that the ALJ should have considered plaintiff's neck pains in her RFC determination (Doc. 17, pp. 1-2). First, it is noted that plaintiff did not raise this issue in her initial brief and thus it is not

properly before the Court at this late juncture. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (discussing reasons district courts should not consider arguments not raised initially before the magistrate judge, even though review may be *de novo*). Regardless, plaintiff did not testify to or allege limitations arising from neck pain to the ALJ. Plaintiff's objections vaguely allege her "neck injuries cause[] her great pain" (Doc. 17, p. 1). Plaintiff's conclusory allegations of neck pain do not warrant remand.

### ii. The ALJ Gave Insufficient Weight to the Opinion of Dr. Gilbert-Johnson

Plaintiff also objects to the R&R's finding that the ALJ did not err in rejecting Dr. Gilbert-Johnson's opinion, set forth in her letter of November 18, 2010, that plaintiff was unable to work, "[d]ue to her symptoms including poor concentration and memory problems" (Tr. 368). Plaintiff states the ALJ cited conflict between Dr. Gilbert-Johnson's opinion and treatment notes, but "fail[ed] to mention all the consistencies in the treatment records" (Doc. 17, p. 2). Concerning Dr. Gilbert-Johnson's opinion, the ALJ stated:

> Dr. Gilbert-Johnson opined that the claimant is unable to work due to problems with poor concentration and memory, along with Bipolar II symptoms. Opinions regarding the question of disability are ultimately reserved to the Commissioner. Furthermore, Dr. Gilbert-Johnson's own treatment notes do not support the degree of limitation alleged in her opinion. Specifically, Dr. Gilbert-Johnson's findings reported the claimant oriented in all three spheres, and her notes show no change with cognition. While the record does show that in 2010 the claimant had some memory problems and poor concentration, Dr. Gilbert-Johnson assessed the claimant was a [Global Assessment of Functioning] GAF score of 50, which is indicative [of] only moderate problems and not suggestive of such severe problems that all work is precluded. Additionally, the GAF

> scores contained in the record show only mild to moderate symptoms, and this further diminishes the credibility of Dr. Gilbert-Johnson's opinion that the claimant's symptoms are so severe that no work is available. Therefore, due to the opinion's inconsistencies with Dr. Gilbert-Johnson's internal findings, as well as its inconsistency with the other objective medical evidence, this opinion is given little weight.

(Tr. 19) (internal citations to record omitted).

While plaintiff contends that Dr. Gilbert-Johnson has been treating her since 2009 on an ongoing basis (Doc. 12, p. 4), the administrative record reflects plaintiff visited Dr. Gilbert-Johnson three times in 2010 and twice in 2011.[2] At plaintiff's visit of September 2010, plaintiff told Dr. Gilbert-Johnson her depression had worsened in the last two to three weeks, she was upset because the summer was over, she was stressed due to her husband and finances, and that her house was for sale. On exam, her thought process was goal-directed and her mood was depressed. Her affect was mildly constricted. Her behavior was within normal limits and she was alert and oriented (Tr. 408). In October 2010, plaintiff told Dr. Gilbert-Johnson she had continued memory problems and occasional poor concentration (Tr. 406). At the November 2010 visit, plaintiff noted memory problems and shortened concentration to Dr. Gilbert-Johnson (Tr. 404). On all three visits, Dr. Gilbert-Johnson assessed her GAF at 50.

Plaintiff saw Dr. Gilbert-Johnson again in January and February 2011 (Tr. 449-52). At those visits, plaintiff complained of short-term memory problems and stated she felt nervous with her husband and his son (Tr. 449, 451). She had a

---

[2] Although the Court Transcript Index indicates Dr. Gilbert-Johnson saw plaintiff in 2009 (Doc. 9-7, p. 1), the referenced documents are apparent assessments of APN Ackerman (Tr. 221-33).

low mood and felt the weather was affecting her mood as she "hadn't been able to get out much" (Tr. 449). She stated she often felt worse in the winter and indicated she would do better if she could get out and do things (Tr. 451). Dr. Gilbert-Johnson assigned her a GAF score of 52 at both visits and noted no change in cognition (Tr. 449-52).

As the ALJ stated in her decision, Dr. Gilbert-Johnson's statement that plaintiff is "unable to work" or "disabled" is not entitled to any special weight as this is a determination reserved to the Commissioner (Tr. 19). *See* 20 C.F.R. § 404.1527(d)(3),(e); SSR 96-5p. Further, Dr. Gilbert-Johnson's medical opinion as to the nature and severity of plaintiff's impairments is not automatically entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2) explains,

> If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, [the Commissioner] will give it controlling weight.

*See* 20 C.F.R. § 404.1527(c)(2).

As the R&R notes, "[a]n ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." *Hall ex rel. Hall v. Astrue*, 489 Fed. App'x. 956, 958 (7th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(3), (4); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

The ALJ's decision adequately articulates her reasons for giving Dr. Gilbert-Johnson's opinion little weight. *See Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008). The ALJ cites inconsistencies between Dr. Gilbert-Johnson's statement and her own treatment notes as well as other objective medical evidence contained in the record. As the ALJ noted, Dr. Gilbert-Johnson indicated plaintiff had some concentration and memory problems. However, the ALJ found that Dr. Gilbert-Johnson's treatment notes and the other objective medical evidence did not reflect disabling symptoms and thus reasonably concluded that Dr. Gilbert Johnson's opinion should be given little weight. As such, the ALJ's decision concerning the weight attributable to Dr. Gilbert-Johnson's opinion is supported by "substantial evidence." *Books*, 91 F.3d at 977-78.

Further, in reliance on one treatment note from Dr. Gilbert-Johnson (Tr. 408-409), in addition to evidence from other medical providers, plaintiff argues that the treatment records are not inconsistent with Dr. Gilbert-Johnson's statement of November 18, 2010. Once again, to the extent plaintiff asks this Court to reweigh the evidence, the Court is in agreement with the R&R in declining plaintiff's invitation. *See Ketelboeter*, 550 F.3d at 625 ("We cannot substitute our judgment for that of the ALJ when assessing the weight of the evidence.").

Finally, plaintiff's objections attach additional medical evidence from February and March 2012, indicating plaintiff ingested a bottle of Lithium in an apparent attempt to commit suicide (Doc. 17-1, 2, and 3). Plaintiff argues this is

new, material evidence which requires remand. Again, as these medical records existed at the time plaintiff filed her brief before this Court in August 2012, it is unclear why plaintiff would choose to submit them only after Magistrate Judge Proud made his recommendation. On this basis, the Court does not feel it appropriate to review them now. *See Meglar,* 227 F.3d at 1040.

Regardless, the Court finds this evidence does not require remand. "A district court may order that additional evidence be taken before the Commissioner upon a showing that there is 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Simila v. Astrue,* 573 F.3d 503, 522 (7th Cir. 2009) (quoting 42 U.S.C. § 405(g)). "'New' evidence is that which is 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id.* (quoting *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997)). For evidence to be material, there must be "'a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered.'" *Id.* (quoting *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005)), and the evidence must be "relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt,* 395 F.3d at 742 (quoting *Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir. 1990)).

Plaintiff merely argues these additional medical exhibits "are material to this case as they show the seriousness of [plaintiff's] mental illness and how it has

continued. These were records were not available in any prior Administrative hearing as they happened after the date the Appeal Council made their decision" (Doc. 17, p. 4). The Commissioner argues this additional medical evidence is not "material" (Doc. 18, pp. 5-6). The Court is in agreement with the Commissioner.

"Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue,* 539 F.3d 473, 484 (7th Cir. 2008); s*ee also Schmidt,* 395 F.3d at 742 (finding that medical records that post-date the hearing and '"speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration' do not meet the standard for new and material evidence" (quoting *Kapusta,* 900 F.2d at 97, with brackets in original)). While these records document treatment for the same ailments plaintiff alleged constituted a disability in the administrative proceedings, they speak only to her condition as of February and March 2012, more than six months after the ALJ rendered her decision. This medical documentation could not have "affected the bottom line" of the ALJ's decision of August 2011. *Schmidt,* 395 F.3d at 743. Thus, this additional documentation is not "material" and does not warrant remand. If plaintiff's condition has worsened, her remedy is to file a new application. *Getch*, 539 F.3d at 484. On the basis of the above, the Court **ADOPTS** the findings and recommendation of the R&R.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the findings and recommendation of the R&R (Doc. 16) over plaintiff's objections (Doc. 17). The Commissioner's final decision denying plaintiff Kathy A. Priddy's application for benefits is **AFFIRMED**. The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 8th day of May, 2013.

Digitally signed by
David R. Herndon
Date: 2013.05.08
11:11:04 -05'00'

**Chief Judge
United States District Court**